**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL EGUES,<br><br>                Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC; EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION, LLC,<br><br>                Defendants. | Civil Action No: 21-802 (SDW)(LDW)<br><br>**OPINION**<br><br><br>August 9, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendant Nelnet Servicing, LLC's ("Nelnet" or "Defendant") Motion to Dismiss Plaintiff Michael Egues' ("Plaintiff") Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED**.

**I.**      **BACKGROUND AND PROCEDURAL HISTORY**

At some point prior to May 2015, Plaintiff incurred a student loan debt ("Debt") that was administered by Nelnet, a company which "deals in the administration and repayment of student loans and education financial services." (D.E. 1-3 ¶¶ 5, 8.) In that role, Nelnet "regularly . . . furnishes information to various consumer reporting agencies regarding Nelnet's transactions with consumers." (*Id.* ¶ 5.) On or about May 16, 2015, the Debt was "transferred to another lender,

1

and Plaintiff's obligations to Nelnet ceased." (*Id*. ¶ 9.) Subsequently, Nelnet provided credit bureaus with information about the Debt and Plaintiff's payment history. (*Id*. ¶ 11.) That information indicated that: 1) Plaintiff had had an account with Nelnet; 2) that account had been "closed due to transfer" in May 2015; 3) the "Balance Amount" was "$0"; 4) Nelnet had last verified the balance on or about May 16, 2015; and 5) the "Payment Status" was "Late 120 Days." (D.E. 25-2 at 10-12.)[1] A summary of Plaintiff's two-year payment history indicated that Plaintiff began falling behind in his payments in August 2014. (*Id.*) Plaintiff does not allege that he paid off his debt prior to the Loan being transferred, nor does he dispute that he was delinquent in his payments prior to the transfer. (*Id.*) Six years later, in May 2020, Plaintiff "disputed the errors on his credit report with Equifax," and Equifax forwarded the dispute to Nelnet. (D.E. 103 ¶¶ 14-16.) Plaintiff contends that "Nelnet failed to conduct a reasonable investigation and [improperly] verified the information as accurate." (*Id.* ¶¶ 16, 20-24.)

On December 15, 2020, Plaintiff filed suit in the Superior Court of New Jersey, Essex County, Law Division against Nelnet, Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. (D.E. 1-3.)[2] Specifically, Plaintiff alleges that Nelnet continues to inaccurately report "a current pay status of 'Late 120 days' to the credit bureaus concerning Plaintiff's account through the present" and "failed to conduct a reasonable investigation" when Plaintiff disputed the validity of his credit report. (*Id.* ¶¶ 11-16.) As a result, Plaintiff alleges he has suffered "injury to

---

[1] The record contains credit aggregation reports which indicate that Plaintiff had three separate Nelnet accounts and that information about those accounts was furnished to three separate credit reporting agencies: Trans Union, Experian, and Equifax. (*See* D.E. 25-2 at 10-12; D.E. 26 at 5-6.) Although it is not clear which of Plaintiff's accounts he refers to in his Complaint, resolution of that question is irrelevant to this Court's analysis.

[2] Neither Equifax nor Trans Union join in Nelnet's motion. Therefore, this Court addresses only Plaintiff's claims against Nelnet.

2

credit worthiness and increased difficulty obtaining credit" and "embarrassment, humiliation, and other emotional injuries . . .." (*Id.* ¶ 17.) The Complaint was removed to this Court on January 15, 2021, and Nelnet subsequently moved to dismiss. (D.E. 1, 25, 38, 39.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" Bell *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint

should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (internal citation omitted). "Under [the] FCRA, [credit or consumer reporting agencies or 'CRAs'] collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 861 (3d Cir. 2014). As such, the FCRA "imposes a variety of obligations on both furnishers and CRAs." *Id.*; *see also* 15 U.S.C. § 1681s-2(b)(1)(A)-(D). In relevant part, the statute requires that a furnisher notified of a dispute conduct an investigation and "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [furnisher] furnished the information . . .." 15 U.S.C. § 1681s-2(b)(1)(D). To state a claim under § 1681s-2(b), a plaintiff must plead that they: "(1) sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Cheadle v. Experian*, Civ. No. 20-18183, 2021 WL 3144843, at *3 (D.N.J. July 26, 2021) (internal citation omitted); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011); *Ruff v. America's Serv. Co.*, Civ. No. 07-489, 2008 WL 1830182, at *4 (W.D. Pa. Apr. 23, 2008). Information is "inaccurate" under the statute if it is factually incorrect or if it is "technically correct" but "through omission, . . .

'create[s] a materially misleading impression.'" *Seamans*, 744 F.3d at 865; *see also Bibbs v. Transunion LLC*, Civ. No. 20-4514, 2021 WL 695112, at *3 (E.D. Pa. Feb. 23, 2021).

Here, the information Nelnet furnished is not inaccurate, nor does it create a materially misleading impression of Plaintiff's credit history. Although Plaintiff alleges that Nelnet "is reporting that Plaintiff is *currently* 120 days delinquent on an account which Plaintiff is no longer obligated to make payments," (D.E. 38 at 2 (emphasis in original)), when read as a whole, it is clear that the information Nelnet provided is historical and regards Plaintiff's accounts as of May 2015 when they were closed/transferred to another servicer. As such, that information makes no reference to any current payment obligation. To adopt Plaintiff's position, this Court would have "to read in nonexisting present tense language" into the information Nelnet furnished regarding an account it closed in 2015. *Bibbs*, 2021 WL 695112 at * 7 (granting judgment on the pleadings for defendant where plaintiff's credit report reflected a $0 balance but contained a 120-day delinquency notice for a loan that was previously closed and transferred to another servicer); *see also Lacey v. TransUnion, LLC*, Civ. No. 21-519, 2021 WL 2917602, at *4 (M.D. Fla. July 12, 2021) (dismissing plaintiff's FCRA claim with prejudice and rejecting plaintiff's argument that "Pay Status: account 120 Days Past Due Date" was misleading, finding that "a review of the credit report . . . shows that as a whole it is not inaccurate"); *Settles v. Trans Union LLC*, Civ No. 20-84, 2020 WL 6900302, at *4 (M.D. Tenn. Nov. 24, 2020) (dismissing plaintiff's FCRA claim where loan servicer closed plaintiff's account, transferred the loan, and reported a $0 balance and "pay status" of "120 Days Past Due Date," finding that "the reported information, taken as a whole, is neither inaccurate nor materially misleading" and that the "circumstances would not reasonably mislead a creditor to believe that Plaintiff is currently past due on this loan"). In addition, this Court would have to "parse and squint, and consider only the pay status line" as opposed to the

5

entirety of the furnished information. *Lacey*, 2021 WL 2917602 at *4. This Court declines to take such a narrow approach and instead joins the numerous courts which have held that "the mere reporting of historical information on a closed account with a $0 balance neither causes confusion nor creates an inaccuracy when it is clear there exists no ongoing obligation for payment." *Robinson v. Webbank*, Civ. No. 19-2458, 2020 WL 8225363, at *3 (N.D. Ga. Nov. 17, 2020). Therefore, Defendant's motion will be granted.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is Granted. An appropriate order follows.

                                                                                         /s/ Susan D. Wigenton  
                                                                          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk  
cc:          Leda D. Wettre, U.S.M.J.  
               Parties